State of West Virginia *v.* Grover C. Robertson *et al.*

(No. 9399)

Submitted September 15, 1942. Decided September 22, 1942

*Preston & Davis, Robert S. Spilman, Sr.,* and *Homer A. Holt,* for petitioner.

*T. C. Townsend, Harry R. Angel* and *Joseph Thomas,* for respondents.

Per Curiam:

On August 14, 1942, D. Jackson Savage, one of the petitioners herein, presented to the Circuit Court of Kanawha County his bill in equity against Grover C. Robertson and others, seeking to enjoin the holding of a convention to nominate a candidate of the Democratic party for the office of Judge of the Intermediate Court of Kanawha County, which convention had theretofore been called to meet on August 15, 1942, at two o'clock P. M. His prayer for injunction was denied by the circuit court, and on the morning of August 15th, acting under Code, 53-5-5, he presented his bill to this Court. Three of the judges of this Court, sitting in vacation, heard arguments for and against the injunction prayed for, and upon consideration of which a temporary injunction was awarded effective as of 12:30 P. M. of that day, restraining the holding of said convention before the expiration of thirty days from the date of the magisterial convention, held in Charleston Magisterial District, on the 12th day of August, 1942, within five days from the date when any contest growing out of such district convention should

have been passed upon by the Democratic Executive Committee of Kanawha County, unless otherwise ordered by the court; the cause was then returned to the Circuit Court of Kanawha County. It is alleged that the injunction so awarded was served on respondents Robertson and Carson, and that the fact of its issuance was publicly made known to all of the respondents in advance of the hour when the convention enjoined had been called to meet. Notwithstanding these proceedings, the respondents herein, along with many others, not now before the Court, proceeded to and did hold what they term a convention, and assumed to nominate a candidate for the Democratic party for the office of Judge of the Intermediate Court of Kanawha County, and assumed to certify such nomination to the Clerk of the Circuit Court of said county, the effect of which was to nullify the action of this Court in awarding the injunction aforesaid. On August 17, 1942, the petition in this proceeding was filed, and on the 21st day of August, this Court, acting in special term, all members being present, awarded a rule against the respondents requiring them to appear before us on August 31, 1942, to show cause why they should not be attached and punished for their alleged contemptuous acts and conduct in the particulars set out above. The petition aforesaid was copied into the rule and the same has been legally served on all the respondents.

The far reaching importance of the question presented cannot well be magnified. So far as we know, this is the first instance in the history of this state where an order of this Court has been openly disregarded and disobeyed, and affirmative action taken in an attempt to nullify and make the same ineffective. The indignity suffered by the individual members of the Court who awarded the said injunction may be waived as of secondary importance. The attack upon the Court, as such, is the broad issue presented. If men may take the law in their own hands, in defiance of the processes of the highest court in our judicial system, then of what force and effect are the decrees, orders and processes of any court, and what be-

comes of the power vested in courts under our constitution and laws enacted thereunder?

It should be here plainly stated that the questions considered by us when the injunction was awarded did not involve the merits of any controversy as to the legality of any magisterial district convention, or the selection of any delegate to the county judicial convention. Clearly, the purpose sought to be effected by the injunction was to preserve the status quo, and to afford to interested persons, in an appropriate proceeding under the statute, an opportunity to contest the selection of delegates to the county judicial convention. There is authority for such a proceeding. *Hall* v. *Stepp*, 105 W. Va. 487-491, 143 S. E. 153. In such proceeding, all persons, including the respondents, would have had their day in court, and the right of matters settled in due form of law. The respondents were, apparently, unwilling to submit their case to such test, and sought to accomplish the purpose by other methods.

The respondents make no denial of their participation in the county judicial convention, which our order enjoined. Their defense, aside from the factual question of notice or knowledge of the injunction order, is that this Court was without power and jurisdiction to award the injunction; that the same was void; and that its violation cannot be made the basis of a contempt proceeding against them. To this we reply, that in all cases not governed by the provisions of the federal constitution, or laws enacted thereunder, we have power to determine our own jurisdiction. If we cannot finally pass thereon, who can? We impliedly held that we had jurisdiction to enter the injunction order. Right or wrong, that holding settled the jurisdictional question so far as it bears on the legality and effective force of the order we made. This Court claims no infallibility as to its judgments and decisions. If the respondents, who were parties to the cause in which the injunction was awarded, had desired to further test the question of jurisdiction, they could have done so on motion to dissolve, or upon a full hearing of the cause,

in the circuit court. If an adverse decision had been rendered in that court, they would have had the right to ask for an appeal to this Court, and there would have been no impropriety in again urging the contention that the injunction was improperly issued for want of jurisdiction. Even after a final decision by this Court on the question, any aggrieved party could have asked for a rehearing, and the matter again reviewed. Instead of pursuing that course, the respondents elected to defy the Court. This we hold they did not have the right to do.

Orderly and constitutional government being at stake, the case before us calls for prompt and stern action on our part. It admits of neither compromise nor delay. This Court was first established when our people were engaged and divided in a great military conflict. Out of that conflict personal and political passions were engendered, resulting in disputes which this Court was called upon to decide in an atmosphere of violent antagonisms and prejudices. Later on, and down to the present day, political rivalries, both partisan and factional, have been intense, and many times this Court has been called upon to decide important and intricate questions originating in political contests. However bitter the contest, the decisions of this Court thereon have been accorded respect, and accepted to the same extent as in other types of litigation. With this record before us, this Court, as now constituted, would be derelict in its duty if it should permit its orders to be openly flaunted and disobeyed. The case before us requires a determination, once and for all, whether the power and dignity of this Court, intrusted to us under the constitution and statutes of this state, shall be upheld with the force and vigor which has been transmitted to us by those who have constituted the Court in the past, or weakly surrendered. We choose to uphold the power and dignity of the Court, and to assert its authority to enforce its orders and decrees to effectuate that end.

The power of this Court to punish for contempt is inherent in the very nature of things, and without it we

would be unable to function as a court and enforce our orders, decrees and mandates. Statutory provisions, assuming to limit courts in punishing for contempt, were never meant to apply and do not apply to this Court. *State v. Frew & Hart,* 24 W. Va. 416, 49 Am. Rep. 257. We are, therefore, free to take such action and impose such penalties as are necessary to make our orders and decrees effective, and to uphold our prestige and authority.

We find the respondents, Grover C. Robertson, Luther Carson, James A. Bibby, Jr., Sabe G. Corey and John Howell, guilty of contempt for disobedience of the injunction order awarded by this Court in the chancery cause of *D. Jackson Savage et al. v. Grover C. Robertson et al.,* hereinbefore mentioned. Robertson and Carson were parties to the cause in which the injunction was awarded, and had full notice and knowledge of that proceeding, both in the Circuit Court of Kanawha County and in this Court. We think the injunction order was legally served upon them. Parties may not refuse service of processes of any court, and the efforts of these parties to escape service of process by refusing to accept and read the same did not destroy the effectiveness of the service thereof. All of the surrounding circumstances convince us that these parties had notice and knowledge, derived from other sources, of the awarding of the injunction. The respondent, James A. Bibby, Jr., a member of the Bar of this Court, was present at the hearing on the injunction in the circuit court; he heard the announcement that the injunction had been awarded made by J. Blackburn Watts before the convention convened; he knew of the presence of the sheriff of Kanawha County and his deputies; and he knew of the reading by the sheriff of the injunction order. He is, therefore, charged with full notice of the issuance of the said injunction. Notwithstanding this, he actively participated in the proceedings of the convention by presenting a candidate for nomination and otherwise. Sabe G. Corey knew of the injunction proceeding in the Circuit Court of Kanawha County and in this Court, and states that he left the

state capitol at a time when people were waiting for a decision of this Court on the matter of injunction; he took an active part in urging that the convention be convened; he was present when Watts made his announcement that the injunction had been awarded, and he did not leave the convention hall until after the arrival of the sheriff and his deputies for the purpose of serving the injunction order. The respondent, John Howell, acted as secretary of the convention, and later, with full knowledge of the injunction order, certified the nomination of a candidate selected by the convention to the Clerk of the Circuit Court of Kanawha County. We find him guilty by reason of his act of certifying said candidate as aforesaid. As to the respondents, Ralph Beuchler, Denver D. Hill, Sam Leadman and Jake Huffman, the Court is in doubt as to whether they had such notice and knowledge of this Court's order as to lay them open to contempt for disobedience thereof. This being a criminal contempt, the evidence necessary to convict should at least be clear and convincing, if not such as to show guilt beyond all reasonable doubt. We give to these respondents the benefit of the doubt, and as to them, they will be found not guilty and the rule against them discharged. As to those found guilty, we hold that such guilt has been shown beyond reasonable doubt.

Proceeding to fix punishment, a fine of $500.00 is imposed on each of the following named respondents, namely, Grover C. Robertson, Luther Carson, James A. Bibby, Jr., and Sabe G. Corey. A fine of $100.00 is imposed upon the respondent, John Howell. The respondents so found guilty will be required to pay the costs of this proceeding, including the expense of taking testimony and compensation to the special master heretofore appointed to supervise the taking of such testimony. An appropriate order will be entered carrying into effect the ruling of the Court.